1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| | |
|---|---|
| BRIAN K. RICE,<br><br>                              Petitioner,<br><br>          v.<br><br>M.E. SPEARMAN,<br><br>                              Respondent. | Case No. 1:15-cv-00437 MJS (HC)<br><br>**ORDER REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

19
20
21
22
23
24

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, M.E. Spearman, Warden of Correctional Training Facility in Soledad, California is represented by David E. Eldridge of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 8-9.)

**I.    Procedural Background**

25
26
27
28

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following being found guilty by a jury on April 12, 2012, of attempted second degree robbery and

several sentencing enhancements. (Clerk's Tr. at 128.)  On May 10, 2012, Petitioner was sentenced to a determinate term of fourteen years in state prison.  (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District on September 17, 2012. (Lodged Doc. 6.) The court affirmed the judgment on July 17, 2013. (Answer, Ex. A.) Petitioner sought review from the California Supreme Court. (Lodged Doc. 9.) The California Supreme Court denied review on September 25, 2013. (Id.)

Petitioner next filed collateral challenges to his conviction in state court in the form of petitions for writ of habeas corpus. He filed a petition for writ of habeas Corpus with the Kern County Superior Court on January 3, 2014. The petition was denied on March 24, 2014. (Lodged Doc. 11.) Petitioner next filed a petition for writ of habeas corpus with the California Court of Appeal, Fifth Appellate District. The petition was denied on June 30, 2014. (Lodged Doc. 10.) Finally, Petitioner filed a petition for writ of habeas corpus with the California Superior Court on November 13, 2014. The petition was denied on January 21, 2015. (Lodged Doc. 12.)

On March 20, 2015 Petitioner filed the instant federal habeas petition. (Pet., ECF No. 1.) Petitioner presents a claim that trial counsel was ineffective for failing to call a defense investigator as a witness to impeach the testimony of the victim. (Pet.) Petitioner also asserts that appellate counsel was ineffective for failing to preserve his claims of ineffectiveness of trial counsel on appeal. (Id.)

Respondent filed an answer to the petition on May 18, 2015. (ECF No. 10.) Petitioner filed a traverse on August 6, 2015. (ECF No. 15.) The matter stands ready for adjudication.

## II.    State Court Decision[1]

FACTS

The Trial

---

[1] The decision of the Fifth District Court of Appeal is provided in its entirety. Further, the Fifth District Court of Appeal's summary of the facts in its July 17, 2013 opinion is presumed correct.  28 U.S.C. § 2254(e)(1).

Bakersfield Police Lieutenant Joseph Aldana testified that on January 22, 2012, at approximately 12:40 a.m., he was on patrol in an unmarked car on Martin Luther King Boulevard near Potomac. As he passed by a dirt lot, he saw Rice standing over Faruk Alam punching him four or five times as Alam lay on the ground. Lieutenant Aldana shined his light on the two men, parked his car, and walked toward them. Several onlookers were present and when one of them yelled, "Police," Rice got off of Alam and walked across Martin Luther King Boulevard. Officer Dean Barthelmes arrived on the scene with other officers and detained Rice.

Lieutenant Aldana contacted Alam briefly and saw a small amount of blood on his face. He asked Alam if he needed medical attention and told him the officers who were arriving would get a statement from him. Lieutenant Aldana contacted the other officers to see who would be handling the case and told them what he observed. He also walked across the street, spoke briefly with Officer Barthelmes and left the area.

Alam testified he was walking from his apartment to buy a phone card when he was stopped by a man with a beard who asked him, "What do you have?" The man had his hands in his pockets and appeared to be pointing a weapon at Alam. Alam told the man he was going to the store. Every time Alam tried to pass, the man blocked him. Alam then turned around and crossed the street where he ran into Rice, who was missing the tips of two fingers on one hand. Rice grabbed Alam's shirt. Alam managed to get out of his grasp, but Rice got him in a headlock from behind. Alam fell and Rice got on top of him. Alam screamed for someone to call the police. Rice put his hand over Alam's mouth and repeatedly told him not to scream as he hit Alam in the face with his other hand. Rice kept telling the bearded man to check Alam's pockets. The bearded man went through Alam's pockets. He then told Rice, "He don't have anything. Let him go. Let him go. The police are going to come."

The next thing Alam remembered was that a man stopped his car, asked Alam's attackers what they were doing, and told them the police were coming. The man left, however, after Rice and the bearded man cursed at him. About two minutes later, a flashlight shone on Alam and Rice and Rice got off of him and walked away. Alam told an officer who spoke to him he did not want an ambulance and just wanted to go home.

Before the assault Alam had a $20 bill and a cell phone in his jacket pocket. After the assault he still had the $20 bill, but was missing the cell phone. However, he did not know whether one of the men took the phone.

During cross-examination, Alam testified he was uncertain whether he told the officer who interviewed him about the bearded man. However, he unequivocally testified that he did not tell the officer that the bearded man pointed a weapon at him or that he went through his pockets. Alam also did not tell the officer that Rice went through his jacket pockets or that Rice told the second man to go through them.

Officer Michael Malley testified that he responded to the scene and saw Alam sitting on the ground in the dirt lot breathing heavily. Officer Malley interviewed Alam with Officer Barthelmes present. Alam told Officer Malley that he was walking across Martin Luther King Boulevard and a man came up to him with his hand in his hooded sweatshirt and pointed

what appeared to be a weapon at him. Alam feared for his safety because he did not know whether the man had a weapon and he begged the man not to rob him. Alam then walked back across the street and backpedaled into a dirt lot. He was trying to get away when the man punched him in the face, which caused him to fall to the ground. Once he was on the ground, the man began to repeatedly punch and kick him in the face and abdomen. The man also reached into Alam's pocket and demanded that Alam give him "all his stuff."

Afterwards, the man walked back across Martin Luther King Boulevard as Lieutenant Aldana arrived in his patrol car. Alam and Lieutenant Aldana each pointed out the suspect. During the interview, Alam did not mention anything about a bearded man or a calling card.

After he was interviewed by Officer Malley, Officer Barthelmes drove Alam the one-half block to his home. The officers did not find a cell phone on Rice.

The Marsden Hearing

On May 10, 2012, prior to Rice being sentenced, defense counsel advised the court that Rice believed defense counsel provided ineffective representation and that Rice was asking for a Marsden hearing. The court then cleared the courtroom and allowed Rice to voice his complaints. Rice, in pertinent part, complained about defense counsel's alleged failure to impeach Alam with the version of the assault he provided to the police and to the defense investigator. In doing so, Rice stated:

"I feel I was denied a fair trial by [defense counsel]. *There were three different stories given by Faruk Alam. The jury only got the chance to hear just one, the one he made up on the stand when he testified.* They never heard the statement he gave to police or the statement he gave to [the defense investigator].... Not once ... did the jury get to hear what was stated in the police report.

"I asked [defense counsel] to get Faruk Alam to state what he told officers in the police report in order to impeach him. He did not do it. I asked him to get Lieutenant Aldana to state what was told to him by Faruk Alam in order to impeach him. He did not do it. I asked him to get Officer Malley to state what was told to him by Faruk Alam in order to impeach him. He did not do it. I asked him to submit into evidence the police report in order to impeach him. He did not do it. I asked him to put [the defense investigator] on the stand so the jury could hear the second statement he made in order to impeach him. Again, he did not do it.

*"Mr. Faruk Alam got up on the stand and lied in open court. That was all the jury got to hear because [defense counsel] did nothing in his power to impeach him nor let the jury hear the other statements he made.* [Defense counsel] had five opportunities that I can count to let the jury hear the other statements in order to impeach Faruk Alam. He utilized none." (Italics added.)

4

In response to the above allegations, defense counsel stated,

"Okay. As to impeachment, I think your Honor will remember that was the central defense in the case. Mr. Alam told multiple stories, and I brought that out to the jury. I'll submit on the record...."

The court, however, denied Rice's <u>Marsden</u> motion without inquiring further of defense counsel why he did not call the defense investigator or any other police officers, or why he did not submit any police reports into evidence.

<u>People v. Rice</u>, 2013 Cal. App. Unpub. LEXIS 5024, 2-8 (July 17, 2013).

## III.   Discussion

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  (Pet.)  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a).  Accordingly, this Court has jurisdiction over the instant action.

### B.   Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by AEDPA provisions.

Under AEDPA, a person in custody under a judgment of a state court may only be granted a writ of habeas corpus for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); <u>Williams</u>, 529 U.S. at 375 n. 7.  Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that [are] materially indistinguishable from [a Supreme Court case] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06).   "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied . . . The statute recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).   The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).   For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).   A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).   In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)).   Further, "[t]he more general the rule, the more leeway courts

6

1   have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

2   Ct. 1855, 1864 (2010).  "It is not an unreasonable application of clearly established

3   Federal law for a state court to decline to apply a specific legal rule that has not been

4   squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

5   (2009) (quoted by Richter, 131 S. Ct. at 786).

6                    **2.      Review of State Decisions**

7        "Where there has been one reasoned state judgment rejecting a federal claim,

8   later unexplained orders upholding that judgment or rejecting the claim rest on the same

9   grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

10  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

11  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

12  unreasonable legal or factual conclusion, "does not require that there be an opinion from

13  the state court explaining the state court's reasoning."  Richter, 131 S. Ct. at 784-85.

14  "Where a state court's decision is unaccompanied by an explanation, the habeas

15  petitioner's burden still must be met by showing there was no reasonable basis for the

16  state court to deny relief."  Id.  "This Court now holds and reconfirms that § 2254(d) does

17  not require a state court to give reasons before its decision can be deemed to have been

18  'adjudicated on the merits.'"  Id.

19       Richter instructs that whether the state court decision is reasoned and explained,

20  or merely a summary denial, the approach to evaluating unreasonableness under §

21  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

22  or theories supported or, as here, could have supported, the state court's decision; then

23  it must ask whether it is possible fairminded jurists could disagree that those arguments

24  or theories are inconsistent with the holding in a prior decision of this Court."  Id. at 786.

25  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

26  was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

27  authority to issue the writ in cases where there is *no possibility* fairminded jurists could

28  disagree that the state court's decision conflicts with this Court's precedents."  Id.

1   (emphasis added).  To put it yet another way:

> 2   As a condition for obtaining habeas corpus relief from a federal
> 3   court, a state prisoner must show that the state court's ruling on the claim
>     being presented in federal court was so lacking in justification that there
>     was an error well understood and comprehended in existing law beyond
> 4   any possibility for fairminded disagreement.

5   Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

6   are the principal forum for asserting constitutional challenges to state convictions."  Id. at

7   787.  It follows from this consideration that § 2254(d) "complements the exhaustion

8   requirement and the doctrine of procedural bar to ensure that state proceedings are the

9   central process, not just a preliminary step for later federal habeas proceedings."  Id.

10  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

11  **3.      Prejudicial Impact of Constitutional Error**

12      The prejudicial impact of any constitutional error is assessed by asking whether

13  the error had "a substantial and injurious effect or influence in determining the jury's

14  verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

15  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

16  state court recognized the error and reviewed it for harmlessness).  Some constitutional

17  errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

18  Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

19  (1984).

20  **IV.    Review of Petition**

21  **A.      Claim One – Ineffective Assistance of Trial Counsel**

22      Petitioner contends that his trial counsel was ineffective.  He asserts that trial

23  counsel failed to provide impeachment evidence which allegedly contradicted the

24  testimony of the victim regarding the robbery and the victim's identification of Petitioner.

25  (See generally, Pet.)

26  **1.      State Court Decision**

27      Petitioner presented this claim by way of direct appeal to the California Court of

28

1   Appeal, Fifth Appellate District.[2] The claim was denied in a reasoned decision by the

2   appellate court and summarily denied in a subsequent petition for review by the

3   California Supreme Court. Because the California Supreme Court's opinion is summary

4   in nature, this Court "looks through" that decision and presumes it adopted the reasoning

5   of the California Court of Appeal, the last state court to have issued a reasoned opinion.

6   See Ylst v. Nunnemaker, 501 U.S. 797, 804-05, 111 S. Ct. 2590, 115 L. Ed. 2d 706 &

7   n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court

8   agrees with lower court's reasoning where former affirms latter without discussion); see

9   also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts

10  look to last reasoned state court opinion in determining whether state court's rejection of

11  petitioner's claims was contrary to or an unreasonable application of federal law under

12  28 U.S.C. § 2254(d)(1)).

13          In denying Petitioner's claim, the California Court of Appeal explained:

14          DISCUSSION

15                  Rice contends he would have had a stronger case if defense
16          counsel had impeached Alam with additional statements he made to the
            defense investigator and to officers other than Officer Malley. He further
17          contends that in order for the court to determine whether defense counsel
            could continue to provide adequate representation, the court had to
18          inquire further of counsel to determine whether his failure to use the police
            report for impeachment was a matter of discretion or neglect. Thus,
19          according to Rice, the court abused its discretion when it denied his
            Marsden motion without making this inquiry because "the court exercised
20          its discretion on an inadequate record." We disagree.

21                  "When a defendant requests a substitution of appointed counsel,
            the trial court is required to allow the defendant an opportunity to relate
22          specific instances of his attorney's asserted inadequacy. Depending on
            the nature of the grievances related by defendant, it may be necessary for
23          the court also to question his attorney. (People v. Hill (1983) 148

24          _____
                  [2] It is also noted that Petitioner raised the claim of ineffective assistance of counsel in his petitions
25  for writ of habeas corpus. (See Lodged Docs. 10-12.) The Kern County Superior Court issued a reasoned
    decision on the merits of the claim, however, the Fifth District Court of Appeal denied the claim, stating,
26  "[t]he issues raised in the petition either were, or could have been, raised in the appeal affirmed by this
    court in People v. Rice (July 17, 2013, F064994) [nonpub. opn.].). (See In re Clark (1993) 5 Cal.4th 750,
27  765.)" Accordingly, as the last reasoned decision regarding Petitioner's claim in his habeas petition was
    denied on procedural grounds, the reasoning of the Kern County Superior Court is not considered binding
28  on this court as the last reasoned decision of the state court. However, the Court is not aware of any case
    law prohibiting it from viewing the reasoning of the Kern County Superior Court for its persuasive authority.

Cal.App.3d 744, 753.) For example, in <u>People v. Groce</u> (1971) 18 Cal.App.3d 292 (<u>Groce</u>), at page 297, the court held when a defendant asserts 'specific important instances of alleged inadequacy of [counsel's] representation' such as failure to secure potentially exonerating evidence, the court cannot deny a <u>Marsden</u> motion without inquiry into counsel's reason for not introducing the evidence. But, this court held in <u>People v. Penrod</u> (1980) 112 Cal.App.3d 738, 747, inquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for counsel's conduct toward his client is necessary to determine whether counsel can provide adequate representation. Further, that a defendant disagrees with the trial preparation and strategy adopted by his appointed counsel does not trigger any duty of inquiry by the trial court. [Citation.]" (<u>People v. Turner</u> (1992) 7 Cal.App.4th 1214, 1218-1219.)

"We review a trial court's decision declining to relieve appointed counsel under the deferential abuse of discretion standard. [Citations.]" (<u>People v. Jones</u> (2003) 29 Cal.4th 1229, 1245.)

During the <u>Marsden</u> hearing, Rice claimed Alam had given three versions of the attack: one he provided to police, one he provided to the defense investigator, and one he testified to. He also asserted that defense counsel did not get Lieutenant Aldana and Officer Malley to testify to the statements Alam made to them. The evidence at trial, however, showed that Alam spoke only to Officer Malley and possibly Lieutenant Aldana about the actual assault. Further, Lieutenant Aldana testified he spoke with Alam only briefly to ask him whether he needed medical attention, that Alam made some remarks Aldana did not recall, and that Aldana did not make a police report. Officer Malley testified during direct and cross-examination regarding Alam's statements to him, including that Alam did not mention being accosted by a bearded man. Thus, the only version of the assault the jury did not hear was the version that Alam gave to the defense investigator. Rice, however, did not identify which of Alam's statements to the defense investigator defense counsel should have presented or how they would have further impeached Alam's testimony.

Moreover, it is apparent from defense counsel's statements to the court during the <u>Marsden</u> hearing that he was aware of the importance of impeaching Alam with the prior statements he made about the assault that conflicted with his trial testimony and that he followed this strategy in defending Rice. The trial court could reasonably infer from this that the disagreement between defense counsel and Rice over presenting Alam's statements to the investigator involved trial tactics and strategy which did not trigger a duty of inquiry by the trial court. Additionally, Rice's assertions that the jury heard only one of Alam's three versions of the assault and that defense counsel did nothing to impeach Alam, were not true. Thus, there was no reason for the court to inquire more as to defense counsel's state of mind because it was obvious he had provided, and could continue to provide, adequate representation and that his failure to call the defense investigator was a matter of discretion, not neglect.

Rice cites <u>People v. Munoz</u> (1974) 41 Cal.App.3d 62 (<u>Munoz</u>) and <u>Groce</u>, *supra*, 18 Cal.App.3d 292 in support of his contention that the court had a duty to inquire further of defense counsel. These cases are inapposite.

In <u>Munoz</u>, the defendant complained to the court that his counsel

did not want to defend him and he requested appointment of substitute counsel. These complaints raised the issue whether defense counsel had become so convinced of the defendant's guilt that he was unable to defend him vigorously. (Munoz, supra, 41 Cal.App.3d at pp. 64-65.) Despite such serious allegations, the court did not conduct a Marsden hearing and it made no inquiry at all of the defendant or his counsel. (Munoz, supra, at pp. 65-66.) In finding reversible error, the Munoz court held that the judge's "ruling denying appellant's request for a substitution of attorneys, without an inquiry into the state of mind of the court-appointed attorney and without attempting to ascertain in what particulars the attorney was not providing appellant with a competent defense was tantamount to a refusal on the part of the court to adjudicate a fundamental issue[.]" (Id. at p. 66.)

In Groce, the defendant was convicted of assaulting a woman with a knife. The woman testified that she was taken to a hospital after the assault and that her stab wounds were stitched. During the trial, the defendant complained to the court that the woman was not cut with a knife and that his defense counsel "did not want to bring up the doctor's report." (Groce, supra, 18 Cal.App.3d at p. 295.) The trial court cited its observations of defense counsel's performance during the trial and denied the defendant's motion for substitute counsel without making any inquiry at all of defense counsel. (Id. at pp. 295-296.)

In finding this to be reversible error, the Groce court stated, "The trial judge, of course, was not required to demand the production of the records. His duty was merely to make inquiry as to whether the failure to produce those records was a matter of discretion or neglect of appellant's counsel." (Groce, supra, 18 Cal.App.3d at p. 296.)

Munoz and Groce are easily distinguishable because in each case, although the defendant raised a serious issue with respect to his continued representation by defense counsel, in Munoz the court made no inquiry at all of the defendant or defense counsel and in Groce the court made no inquiry at all of defense counsel. Here, the court allowed Rice ample opportunity to voice his complaints and the only real issue raised by Rice's comments to the court was defense counsel's failure to introduce the version of the assault Alam gave to the defense investigator. The failure to present this version, however, did not raise a serious issue regarding defense counsel's representation of Rice because, as previously noted, Rice did not identify which statements to the investigator defense counsel should have presented or how they would have further impeached Alam. Further, the trial court inquired of defense counsel and its inquiry was sufficient for the court to determine that the failure to present any of Alam's statements to the defense investigator resulted from trial tactics and strategy and not from neglect. Accordingly, we conclude that the court did not abuse its discretion when it denied Rice's Marsden motion.

People v. Rice, 2013 Cal. App. Unpub. LEXIS 5024 at 8-14.

**2.     Law Applicable to Ineffective Assistance of Counsel**

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

1    <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas

2    corpus alleging ineffective assistance of counsel, the Court must consider two factors.

3    <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Lowry</u>

4    <u>v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's

5    performance was deficient, requiring a showing that counsel made errors so serious that

6    he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

7    <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell

8    below an objective standard of reasonableness, and must identify counsel's alleged acts

9    or omissions that were not the result of reasonable professional judgment considering

10   the circumstances. <u>Id.</u> at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348

11   (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

12   indulges a strong presumption that counsel's conduct falls within the wide range of

13   reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 687; <u>see also</u>, <u>Harrington v.</u>

14   <u>Richter</u>, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

15        Second, the petitioner must demonstrate that "there is a reasonable probability

16   that, but for counsel's unprofessional errors, the result ... would have been different,"

17   <u>Strickland</u>, 466 U.S. at 694. Petitioner must show that counsel's errors were so

18   egregious as to deprive defendant of a fair trial, one whose result is reliable. <u>Id.</u> at 687.

19   The Court must evaluate whether the entire trial was fundamentally unfair or unreliable

20   because of counsel's ineffectiveness. <u>Id.</u>; <u>Quintero-Barraza</u>, 78 F.3d at 1348; <u>United</u>

21   <u>States v. Palomba</u>, 31 F.3d 1456, 1461 (9th Cir. 1994).

22        A court need not determine whether counsel's performance was deficient before

23   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

24   <u>Strickland</u>, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

25   deficiency that does not result in prejudice must necessarily fail. However, there are

26   certain instances which are legally presumed to result in prejudice, e.g., where there has

27   been an actual or constructive denial of the assistance of counsel or where the State has

28   interfered with counsel's assistance. <u>Id.</u> at 692; <u>United States v. Cronic</u>, 466 U.S., at 659,

1    and n.25 (1984).

2            As the Supreme Court reaffirmed recently in <u>Harrington v. Richter</u>, meeting the

3    standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> 4          The pivotal question is whether the state court's application of the
>            <u>Strickland</u> standard was unreasonable. This is different from asking
> 5          whether defense counsel's performance fell below <u>Strickland</u>'s standard.
>            Were the inquiry, the analysis would be no different than if, for
> 6          example, this Court were adjudicating a <u>Strickland</u> claim on direct review
>            of a criminal conviction in a United States district court. Under AEDPA,
> 7          though, it is a necessary premise that the two cases are different. For
>            purposes of § 2254(d)(1), "an unreasonable application of federal law is
> 8          different from an incorrect application of federal law." <u>Williams</u>, *supra*, at
>            410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
> 9          deference and latitude that are not in operation when the case involves
>            review under the <u>Strickland</u> standard itself.
> 10
>            A state court's determination that a claim lacks merit precludes
> 11         federal habeas relief so long as "fairminded jurists could disagree" on the
>            correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541
> 12         U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
>            Court has explained, "[E]valuating whether a rule application was
> 13         unreasonable requires considering the rule's specificity. The more general
>            the rule, the more leeway courts have in reaching outcomes in case-by-
> 14         case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of
>            clearly established Federal law for a state court to decline to apply a
> 15         specific legal rule that has not been squarely established by this Court."
>            <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
> 16         2d 251, 261 (2009) (internal quotation marks omitted).

17   <u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

18           "It bears repeating that even a strong case for relief does not mean the state

19   court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, §

20   2254(d) stops short of imposing a complete bar on federal court relitigation of claims

21   already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus

22   from a federal court, a state prisoner must show that the state court's ruling on the claim

23   being presented in federal court was so lacking in justification that there was an error

24   well understood and comprehended in existing law beyond any possibility for fairminded

25   disagreement." <u>Id.</u> at 786-87.

26           Accordingly, even if Petitioner presents a strong case of ineffective assistance of

27   counsel, this Court may only grant relief if no fairminded jurist could agree on the

28   correctness of the state court decision.

### 3.   Analysis

Petitioner contends that trial counsel was ineffective for failing to present differing versions of the victim's story, as provided to the law enforcement investigator. Petitioner argues that the inconsistencies in the victim's account of the incident would have impacted the victim's credibility regarding the events surrounding the attempted robbery and the victim's identification of Petitioner.

In addition to the Court of Appeal's decision denying the claim, the Kern County Superior Court provided a reasoned decision regarding the ineffective assistance of counsel claim. Although it is not the last reasoned decision of the state court, its reasoning remains persuasive:

> To prevail in a claim of ineffective assistance of counsel, petitioner must demonstrate that counsel's conduct fell below professional norms causing prejudice, which, in its absence, would create a probability of a more favorable outcome. Strickland v. Washington (1984) 466 U.S. 668, 694.
>
> Petitioner contends that the jury was entitled to hear all the versions of Alam's story: the one told to the defense investigator; the one told to Officer Aldana, and the one told to Officer Malley. Petitioner contends that Alam lied on the stand and the jury received the benefit of one version of events resulting in a wrongful conviction. The appellate court rejected this argument when it upheld that trial court's denial of petitioner's Marsden motion.
>
> It specifically stated that there was plenty of impeachment by defense counsel of the police officers and Alam. For example, there was $20.00 in Alam's pocket not $7.00; darkness initially prevented Alam from identifying his assailants; it was only when petitioner commenced punching and kicking him did Alam notice that petitioner had fewer fingers on one hand. Alam was still able to identify petitioner in court.
>
> Officer Aldana did not witness the entire fight, but arrived upon its conclusion. Alam expanded on his version of events with Officer Malley, who in turn failed to interview bystanders or passerby who fled upon the arrival of the police.
>
> In spite of the difficulty of the case even for defense counsel, the prosecution was able to obtain a conviction for attempted robbery. Of considerable significance, is that although Alam admitted consuming at most two beers, his perception was not so impaired that he could not relate events to the police.
>
> In spite of the difficulty of the case even for defense counsel, the prosecution was able to obtain a conviction for attempted robbery. Of considerable significance, is that although Alam admitted consuming at

most two beers, his perception was not so impaired that he could not relate events to the police. The bottom line is that no one deserves to be assaulted or be a victim of attempted robbery, not even those who consume beer or suffer from a lack of sleep as portrayed by the defense investigator.

Even though there were minor differences in Alam's story, the fact remains that he didn't lie, a point the prosecution made during her closing statement. Petitioner contends that had defense counsel called the defense investigator, there would be testimony that petitioner took nothing from Alam's pockets. Petitioner contends that he was convicted of robbery. This is not true. He was convicted of attempted robbery, which means that due to the intervening circumstances such as his confederate telling him to leave Alam alone and the arrival of the police, the robbery didn't occur. Petitioner was unable to commit to the target offense.

The calling of a defense witness would result in cumulative evidence, and would not be favorable to petitioner given that the report substantially concurred with the police report. The inconsistencies which petitioner complains of are collateral i.e., the amount of money Alam claimed to possess on the night of the assault. These inconsistencies were already covered in previous cross-examinations by defense counsel – a fact not lost on the trial or appellate court.

There are two important reasons counsel refused to call the defense investigator as a witness.

First, the report is work product and also covered under the attorney/client privilege. Counsel stated that fact during an argument prior to opening statements wherein the prosecution sought its release to them should the investigator or Alam testify. Counsel stated that all he is required is to provide the prosecution with is the names of witnesses he intends to call. Although the trial judge tentatively ordered the report's release, he ultimately sided with defense counsel. Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163. The Hubbard court held that defense counsel need only disclose the witnesses it intended to call and need not disclose as part of reciprocal discovery defense strategy or work product which includes interviews with prosecution witnesses. Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163, 1167-1168 (citing Izazaga v. Superior Court (1991) 54 Cal.3d 376, 377 fn14. The trial judge opined that there is no claim of third-party culpability here by the defense, which might militate for the report's release.

Second, the decision to call witnesses is a tactical decision left to counsel which courts are reluctant to second-guess given the presumption of soundness of tactical reasons. People v. Beagle (1972) 6 Cal.3d 441, 458. To call the defense investigator would result in the presentation of cumulative unfavorable evidence and expose counsel to possible ethical violations for revealing attorney/client privileged material since there is no evidence that petitioner waived the attorney/client privilege. Counsel stated that the investigative report contained nothing of value as a reason for not calling Ms. Espiritu as a witness. Where petitioner raises the identical arguments in habeas corpus rejected by the appellate court, he cannot raise them anew in habeas corpus. In re Waltreus (1965) 62 Cal.2d 218, 225.

1   (Lodged Doc. 11.)

2        Respondent contends that Petitioner failed to present a reasonable argument that

3   counsel fell below the deferential <u>Strickland</u> standard based on the failure to present the

4   defense investigator at trial. Respondent notes that trial counsel cross-examined Alam

5   on his inconsistent reiteration of the events surrounding the robbery. (<u>See</u> Rep. Tr. at 93-

6   108.) Defense counsel also was able to have Officer Kendall admit that Alam smelled of

7   alcohol after the incident. (<u>Id.</u> at 138.) Finally, Respondent contends that there was a

8   real downside of putting the defense investigator on the stand. First, there would be

9   more evidence consistent with Alam's testimony that there were two perpetrators, and

10  that by having the investigator testify, the investigator's report would likely be admitted,

11  containing even further evidence of Petitioner's intent to take Alam's property. (Answer

12  at 13-14.)

13       Petitioner has not shown that trial counsel fell below an objective standard of

14  reasonableness. While there were some inconsistencies with Alam's testimony, his

15  testimony along with the testimony of the officers arriving at the scene presented a

16  largely consistent version of events regarding the attempted robbery. Review of the

17  investigator's report indicates that the defense investigator would have been able to

18  provide little in the way of strong evidence of impeachment. (<u>See</u> Pet. at 50-51.)

19  Moreover, there were strong details that implicated Petitioner. Both Alam and Officer

20  Aldana, who witnesses Petitioner punching Alam, identified Petitioner at trial. (Rep. Tr. at

21  34-35.) Further, Officer Aldana approached and apprehended Petitioner immediately

22  after the incident. (Rep. Tr. at 35-40.) Based on the evidence presented, there was little

23  likelihood that inconsistencies in Alam's testimony to the investigator would have

24  convinced a jury that there was reasonable doubt whether Petitioner committed the

25  attempted robbery.

26       Petitioner has not shown that counsel fell below an objective standard of

27  reasonableness in not presenting the testimony of the defense investigator. Nor has

28  Petitioner shown that he was prejudiced by the failure to present the investigator's

1   testimony. There was no reasonable probability of the result of the trial being different

2   had the testimony been presented.

3       Petitioner has not shown that counsel was ineffective under <u>Strickland</u>. The state

4   court decision denying Petitioner's claim was neither contrary to, nor an unreasonable

5   application of, clearly established Supreme Court law, nor was its decision based on an

6   unreasonable determination of the facts. Petitioner is not entitled to relief on claim one.

7       **B.    Claim Two – Ineffective Assistance of Appellate Counsel**

8       Petitioner contends that his appellate counsel was ineffective. He asserts that

9   appellate counsel failed to present and preserve his arguments regarding trial counsel's

10   ineffective conduct on appeal. (<u>See</u> Pet. at 41-42.)

11       **1.    State Court Decision**

12       Petitioner presented this claim by way of direct appeal to the California Court of

13   Appeal, Fifth Appellate District.   The claim was denied in a reasoned decision by the

14   appellate court and summarily denied in a subsequent petition for review by the

15   California Supreme Court. Because the California Supreme Court's opinion is summary

16   in nature, this Court "looks through" that decision and presumes it adopted the reasoning

17   of the California Court of Appeal, the last state court to have issued a reasoned opinion.

18   <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. at 804-05.

19       In denying Petitioner's claim, the California Court of Appeal stated: "Moreover,

20   petitioner fails to demonstrate ineffective assistance of appellate counsel. (<u>Strickland v.</u>

21   <u>Washington</u> (1984) 466 U.S. 668, 694.)" (Lodged Doc. 10.)

22       **2.    Legal Standard**

23       The Due Process Clause of the Fourteenth Amendment guarantees a criminal

24   defendant the effective assistance of counsel on his first appeal as of right. <u>Evitts v.</u>

25   <u>Lucey</u>, 469 U.S. 387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Claims of

26   ineffective assistance of appellate counsel are reviewed according to the standard set

27   out in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

28   <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000);

1    Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010). The petitioner must show that

2    counsel's performance was objectively unreasonable, which in the appellate context

3    requires the petitioner to demonstrate that counsel acted unreasonably in failing to

4    discover and brief a merit-worthy issue. Smith, 528 U.S. at 285; Moormann, 628 F.3d at

5    1106. The petitioner also must show prejudice, which in this context requires the

6    petitioner to demonstrate a reasonable probability that, but for appellate counsel's failure

7    to raise the issue, the petitioner would have prevailed in his appeal. Smith, 528 U.S. at

8    285-86; Moormann, 628 F.3d at 1106.

9                    **3.    Analysis**

10        Petitioner's claim for ineffective assistance of appellate counsel fails for the same

11   reasons as his claim for ineffective assistance of trial counsel.  As explained above,

12   Petitioner failed to show that trial counsel was ineffective, or that he was prejudiced by

13   counsel's conduct. Trial counsel had sufficient reasons to not present testimony of the

14   defense investigator, and Petitioner has not shown that there was a reasonable

15   probability that Petitioner would have prevailed in his appeal had he presented the claim.

16        Accordingly, Petitioner has not shown that appellate counsel's performance was

17   objectively unreasonable in failing to raise the issue on appeal, and has not shown that

18   there was a reasonable probability that the claim would have prevailed on appeal. Smith,

19   528 U.S. at 285-86; Moormann, 628 F.3d at 1106. Petitioner is not entitled to relief with

20   regard to his claim of ineffective assistance of appellate counsel.

21   **V.    Conclusion**

22        Petitioner is not entitled to relief with regard to the claims presented in the instant

23   petition. The Court therefore orders that the petition be DENIED.

24   **VI.   Certificate of Appealability**

25        A state prisoner seeking a writ of habeas corpus has no absolute entitlement to

26   appeal a district court's denial of his petition, and an appeal is only allowed in certain

27   circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute

28   in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which

provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

>> (B) the final order in a proceeding under section 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.   Petitioner has not made the required substantial showing of the denial of a constitutional right.   Accordingly, the Court hereby DECLINES to issue a

certificate of appealability.

**VII.    Order**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   January 27, 2017                    /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE